IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Norman Taylor, as Administrator of the** | : | CIVIL ACTION |
| **Estate of Ollie Taylor, Jr., deceased** | : | |
| 6630 Milton Street | : | No. 2:14-cv-07100-JHS |
| Philadelphia, PA 19138 | : | |
| | : | REMOVED FROM THE COURT OF |
| Plaintiff, | : | COMMON PLEAS OF PENNSYLVANIA, |
| | : | PHILADELPHIA, COUNTY, AUGUST |
| VS. | : | TERM 2014, NO. 01329 |
| | : | |
| | : | |
| **GGNSC PHILADELPHIA LP, d/b/a** | : | |
| **GOLDEN LIVING CENTER - STENTON** | : | |
| 7310 Stenton Avenue | : | |
| Philadelphia, PA 19150 | : | |
| and | : | |
| **GGNSC PHILADELPHIA GP LLC** | : | |
| 7310 Stenton Avenue | : | |
| Philadelphia, PA 19150 | : | |
| and | : | |
| **GGNSC HOLDINGS, LLC** | : | |
| 7160 Dallas Parkway, Suite 400 | : | |
| Plano, Texas 75024 | : | |
| and | : | |
| **GOLDEN GATE NATIONAL SENIOR** | : | |
| **CARE, LLC** | : | |
| 7160 Dallas Parkway, Suite 400 | : | |
| Plano, Texas 75024 | : | |
| and | : | |
| **GGNSC EQUITY HOLDINGS, LLC** | : | |
| 7160 Dallas Parkway, Suite 400 | : | |
| Plano, Texas 75024 | : | |
| and | : | |
| **GGNSC ADMINISTRATIVE SERVICES,** | : | |
| **LLC** | : | |
| 7160 Dallas Parkway, Suite 400 | : | |
| Plano, Texas 75024 | : | |
| and | : | |
| **GGNSC CLINICAL SERVICES, LLC** | : | |
| 7160 Dallas Parkway, Suite 400 | : | |
| Plano, Texas 75024 | : | |
| And | : | |
| **GOLDEN GATE ANCILLARY, LLC** | : | |
| 7160 Dallas Parkway, Suite 400 | : | |

Plano, Texas 75024                          :
    And                 :
**KAREN EILEEN THOMAS, NHA**                :
3911 Elson Road                             :
Brookhaven, Pennsylvania 19015              :
    And                 :
**ROBYN ANNETTE MARRELL-**                  :
**WILLIAMS, RN**                            :
155 E. Godfrey Avenue, Apt. 303             :
Philadelphia, Pennsylvania 19120            :
    And                 :
**PATRICE MICHELLE GLOVER, RN**             :
230 E. Walnut Park Drive                    :
Philadelphia, Pennsylvania, 19120           :
                                        :
    Defendants.          :

## NOTICE TO DEFEND
## NOTIFICACIÓN PARA DEFENDERSE

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en el tribunal. Si usted quiere defenderse de las demandas expuestas en las páginas siguientes, usted debe tomar acción en el plazo de veinte (20) días a partir de la fecha en que se le hizo entrega de la demanda y la notificación, al interponer una comparecencia escrita, en persona o por un abogado y registrando por escrito en el tribunal sus defensas o sus objeciones a las demandas en contra de su persona. Se le advierte que si usted no lo hace, el caso puede proceder sin usted y podría dictarse un fallo por el juez en contra suya sin notificación adicional y podría ser por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio en la demanda solicitado por el demandante. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| **Philadelphia Bar Association** **Lawyers Referral & Information Services** **One Reading Center** | |

| Philadelphia, Pennsylvania 19107<br>Telephone (215) 238-6333<br>TTY: (215) 451-6197 | Asoclacion De Licenclados<br>De Filladelfla<br>Servicio De Referencia E<br>Informacion Legal<br>One Reading Center<br>Filladelfla, Pennsylvania 19107<br>Telephone (215) 238-6333<br>TTY: (215) 451-6197 |
| --- | --- |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Norman Taylor, as Administrator of the** | CIVIL ACTION |
| **Estate of Ollie Taylor, Jr., deceased** | |
| 6630 Milton Street | No. 2:14-cv-07100-JHS |
| Philadelphia, PA 19138 | |
| | REMOVED FROM THE COURT OF |
| Plaintiff, | COMMON PLEAS OF PENNSYLVANIA, |
| | PHILADELPHIA, COUNTY, AUGUST |
| VS. | TERM 2014, NO. 01329 |

**GGNSC PHILADELPHIA LP, d/b/a**
**GOLDEN LIVING CENTER - STENTON**
7310 Stenton Avenue
Philadelphia, PA 19150
   and
**GGNSC PHILADELPHIA GP LLC**
7310 Stenton Avenue
Philadelphia, PA 19150
   and
**GGNSC HOLDINGS, LLC**
7160 Dallas Parkway, Suite 400
Plano, Texas 75024
   and
**GOLDEN GATE NATIONAL SENIOR**
**CARE, LLC**
7160 Dallas Parkway, Suite 400
Plano, Texas 75024
   and
**GGNSC EQUITY HOLDINGS, LLC**
7160 Dallas Parkway, Suite 400
Plano, Texas 75024
   and
**GGNSC ADMINISTRATIVE SERVICES,**
**LLC**
7160 Dallas Parkway, Suite 400
Plano, Texas 75024
   and
**GGNSC CLINICAL SERVICES, LLC**
7160 Dallas Parkway, Suite 400
Plano, Texas 75024
   And
**GOLDEN GATE ANCILLARY, LLC**

**FILED**

JAN 0 8 2015

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

4

7060 Dallas Parkway, Suite 400                    :
Plano, Texas 75024                                :
    And                        :
**KAREN EILEEN THOMAS, NHA**                      :
3911 Elson Road                                   :
Brookhaven, Pennsylvania 19015                    :
    And                        :
**ROBYN ANNETTE MARRELL-**                        :
**WILLIAMS, RN**                                  :
155 E. Godfrey Avenue, Apt. 303                   :
Philadelphia, Pennsylvania 19120                  :
    And                        :
**PATRICE MICHELLE GLOVER, RN**                   :
230 E. Walnut Park Drive                          :
Philadelphia, Pennsylvania, 19120                 :
                                              :
       Defendants.   :

## SECOND AMENDED COMPLAINT IN CIVIL ACTION

(The Second Amended Complaint Includes a Medical Professional Liability Action)

Plaintiff, Norman Taylor, as Administrator of the Estate of Ollie Taylor, Jr., deceased, by and through counsel, Reddick Moss, PLLC, files the instant Second Amended Complaint in Civil Action, and in support thereof avers the following:

### I.   PARTIES

#### A.  Plaintiff

1.      Ollie Taylor, Jr. is an adult individual and was a resident of GGNSC Philadelphia LP, d/b/a Golden Living Center - Stenton (hereinafter "Facility"), from June 10, 2010, to April 6, 2014.

2.      Norman Taylor is the son of Ollie Taylor, Jr., an adult individual and citizen of the Commonwealth of Pennsylvania, residing at 6630 Milton Street, Philadelphia, Pennsylvania 19138.

5

3.     Norman Taylor was appointed the Administrator of the Estate of Ollie Taylor, Jr.

on August 6, 2014.

### B. Defendants, GGNSC Philadelphia LP, d/b/a Golden Living Center – Stenton; GGNSC Philadelphia  GP LLC; GGNSC Holdings, LLC; Golden Gate National Senior Care, LLC; GGNSC Equity Holdings, LLC; GGNSC Administrative Services, LLC; GGNSC Clinical Services, LLC; Golden Gate Ancillary, LLC; Karen Eileen Thomas, NHA; Robyn Annette Marrell-Williams, RN; Patrice Michelle Glover, RN ("Defendants")

4.     Defendant, GGNSC Philadelphia LP, d/b/a Golden Living Center - Stenton, is a

corporation, duly licensed, organized and existing under and by virtue of the laws of the State of

Delaware, with offices and a place of business located at 7310 Stenton Avenue, Philadelphia PA

19150.

5.     Defendant, GGNSC Philadelphia LP, d/b/a Golden Living Center - Stenton, is

engaged in the business of owning, operating and/or managing nursing homes, including

GGNSC Philadelphia LP, d/b/a Golden Living Center - Stenton, providing healthcare, medical

services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in

Philadelphia County, Pennsylvania; and was at all times material hereto, duly licensed to operate

same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of

all other Defendants noted herein, holding itself and its agents, employees, servants, contractors,

subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to

the public as competent and skillful healthcare providers and practitioners of medicine; and

which is personally, directly and vicariously liable, among other things for the acts and

omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or

partners and all other Defendants, all of whom played a role in the care provided to Ollie Taylor,

Jr. and in the operation of the Facility.

6.      Defendant, GGNSC Philadelphia GP LLC, is a foreign corporation, duly licensed organized and existing under and by virtue of the laws of the State of Delaware, with offices and a place of business located at 7160 Dallas Parkway, Suite 400, Plano, Texas 75024.

7.      Defendant, GGNSC Philadelphia GP LLC, is engaged in the business of owning, operating and/or managing nursing homes, including GGNSC Philadelphia LP, d/b/a Golden Living Center - Stenton, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ollie Taylor, Jr. and in the operation of the Facility.

8.      Defendant GGNSC Holdings, LLC, is a foreign corporation, duly licensed organized and existing under and by virtue of the laws of the State of Delaware, with offices and a place of business located at 7160 Dallas Parkway, Suite 400, Plano, Texas 75024.

9.      Defendant, GGNSC Holdings, LLC, is engaged in the business of owning, operating and/or managing nursing homes, including GGNSC Philadelphia LP, d/b/a Golden Living Center - Stenton, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania;

7

and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ollie Taylor, Jr. and in the operation of the Facility.

10.     Defendant, Golden Gate National Senior Care, LLC, is a foreign corporation, duly licensed organized and existing under and by virtue of the laws of the State of Delaware, with offices and a place of business located at 7160 Dallas Parkway, Suite 400, Plano, Texas 75024.

11.     Defendant, Golden Gate National Senior Care, LLC, is engaged in the business of owning, operating and/or managing nursing homes, including GGNSC Philadelphia LP, d/b/a Golden Living Center - Stenton, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ollie Taylor, Jr. and in the operation of the Facility.

8

12.     Defendant, GGNSC Equity Holdings, LLC, is a foreign corporation, duly licensed organized and existing under and by virtue of the laws of the State of Delaware, with offices and a place of business located at 7160 Dallas Parkway, Suite 400, Plano, Texas 75024.

13.     Defendant, GGNSC Equity Holdings, LLC, is engaged in the business of owning, operating and/or managing nursing homes, including GGNSC Philadelphia LP, d/b/a Golden Living Center - Stenton, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ollie Taylor, Jr. and in the operation of the Facility.

14.     Defendant, GGNSC Administrative Services, LLC, is a foreign corporation, duly licensed organized and existing under and by virtue of the laws of the State of Delaware, with offices and a place of business located at 7160 Dallas Parkway, Suite 400, Plano, Texas 75024.

15.     Defendant, GGNSC Administrative Services, LLC, is engaged in the business of owning, operating and/or managing nursing homes, including GGNSC Philadelphia LP, d/b/a Golden Living Center - Stenton, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of

9

Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ollie Taylor, Jr. and in the operation of the Facility.

16. Defendant, GGNSC Clinical Services, LLC, is a foreign corporation, duly licensed organized and existing under and by virtue of the laws of the State of Delaware, with offices and a place of business located at 7160 Dallas Parkway, Suite 400, Plano, Texas 75024.

17. Defendant GGNSC Clinical Services, LLC, is engaged in the business of owning, operating and/or managing nursing homes, including GGNSC Philadelphia LP, d/b/a Golden Living Center - Stenton, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ollie Taylor, Jr. and in the operation of the Facility.

10

18.     Defendant, Golden Gate Ancillary, LLC, is a foreign corporation, duly licensed organized and existing under and by virtue of the laws of the State of Delaware, with offices and a place of business located at 7160 Dallas Parkway, Suite 400, Plano, Texas 75024.

19.     Defendant, Golden Gate Ancillary, LLC, is engaged in the business of owning, operating and/or managing nursing homes, including GGNSC Philadelphia LP, d/b/a Golden Living Center - Stenton, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Ollie Taylor, Jr. and in the operation of the Facility.

20.     Defendant, Karen Eileen Thomas, NHA, is an individual, who resides at 3911 Elson Road, Brookhaven, Pennsylvania 19015. Upon information and belief at all relevant times herein, Karen Eileen Thomas was the licensed Nursing Home Administrator of the Facility during the residency of Ollie Taylor, Jr., as well as a member of the Governing Body, and is therefore personally, jointly and vicariously liable, among other things, for the acts and omissions of herself (including failure to establish and implement policies regarding the management and operation of the Facility) and her agents, employees, servants, contractors, staff, and/or partners and all other Defendants, played a role in the care provided to Ollie Taylor,

11

Jr., and in the operation of the Facility.  Karen Eileen Thomas's conduct forms a significant basis for the claims asserted herein and from whom Plaintiff seeks significant relief.

21.     Defendant, Robyn Annette Marrell-Williams, RN, is an individual, who resides at 155 E. Godfrey Avenue, Apt. 303, Philadelphia, Pennsylvania 19120.  Upon information and belief at all relevant times herein, Robyn Annette Marrell-Williams was a licensed Registered Nurse at the Facility during the residency of Ollie Taylor, Jr. and was personally involved in providing care and/or wound care to Ollie Taylor, Jr. and was personally liable, among other things, for her acts and omissions and played a role in the care provided to Ollie Taylor, Jr. Upon information and belief, Robyn Annette Marrell-Williams, RN, was an employee of Defendants and the Facility during the residency of Ollie Taylor, Jr.

22.     Defendant, Patrice Michelle Glover, RN, is an individual, who resides at 230 E. Walnut Park Drive, Philadelphia, Pennsylvania 19120.  Upon information and belief at all relevant times herein, Patrice Michelle Glover was a licensed Registered Nurse at the Facility during the residency of Ollie Taylor, Jr. and was personally involved in providing care and/or wound care to Ollie Taylor, Jr. and was personally liable, among other things, for her acts and omissions and played a role in the care provided to Ollie Taylor, Jr.  Upon information and belief, Patrice Michelle Glover, RN, was an employee of Defendants and the Facility during the residency of Ollie Taylor, Jr.

23.     At all times material hereto, Defendants individually and collectively owed duties, some of which were non-delegable, to the residents of the Facility, including Ollie Taylor, Jr., such duties being conferred by statue, existing at common law, and/or being voluntarily assumed by each Defendant.

12

24.     At all times material hereto, Defendants individually and collectively, and/or through a joint venture, owned, operated, managed and controlled the Facility, and are individually and collectively engaged in the business of providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care services to the general public.

## II.     JURISDICTION AND VENUE

25.     Jurisdiction and venue are proper in Philadelphia County, Pennsylvania, insofar as Defendants regularly conduct business in this county, the cause of action arose in this county and/or the action is being brought in any county which venue may be laid against any defendant. See Pa.R.C.P. 1006 and 2179.  Moreover, complete diversity of the parties is lacking given that a number of the Defendants are Pennsylvania residents.

26.     Jurisdiction is improper in the United States District Court for the Eastern District of Pennsylvania given that complete diversity of the parties does not exist.  However, Plaintiff's Amended Complaint was removed to this Honorable Court on the basis of complete diversity. Thus, Plaintiff must file this Second Amended Complaint with this Honorable Court pursuant to Fed. R. Civ. P. 15(a)(1)(B) as Defendants have filed A Motion to Dismiss Punitive Damages under Fed. R. Civ. P. 12(b)(6) and Plaintiff has not yet filed his Motion to Remand at the time of the filing of this Second Amended Complaint.

## III.     FACTUAL BACKGROUND

### A.     Conduct of the Defendants

27.     Prior to his death on April 6, 2014, while a resident, Ollie Taylor, Jr. was a resident of the Facility.[1]

---

[1] Plaintiff is not bringing any claim pursuant to Pa. St. 62 P.S. § 1407(c), and nothing in this Complaint should be interpreted as an attempt to recover damages pursuant to that statute.

28.     Ollie Taylor, Jr. required reliable assistance and skilled care in order to complete his activities of daily living which necessitated his admission do Defendants' Facility.

29.     In exchange for financial consideration, and pursuant to the admission contract, Ollie Taylor, Jr. was admitted to the Facility in order to obtain and be provided with that assistance.

30.     Moreover, Defendants were required by their provider agreements to ensure that they provided for all of Ollie Taylor, Jr.'s care needs.

31.     The Defendants, through advertising and marketing of the Facility to local hospitals and other providers, held themselves out as capable of providing the level of care required by sick, elderly and frail individuals like Ollie Taylor, Jr., through a number of services including medical, skilled nursing, occupational therapy, physical therapy, speech therapy and daily custodial care, including hygiene.

32.     When Defendants agreed to admit Ollie Taylor, Jr. they assumed the obligation of providing for his total healthcare, including the provision of nutrition, hydration, activities of daily living, medical, skilled nursing, occupational therapy, speech therapy, physical therapy and daily custodial care.

33.     Defendants exercised complete and total control over the healthcare of all the residents of the Facility, including Ollie Taylor, Jr.

34.     At all times material hereto, Defendants were vertically integrated organizations that were controlled by their respective members and/or boards of directors, who were responsible for the operation, planning, budgeting, management and quality control of the Facility.

14

35.    The control exercised over the Facility by the Defendants included, inter alia: cash management; cost control; setting staffing levels; budgeting; marketing; maintaining and increasing census; supervision of the Facility Administrator and Director of Nursing; supervision and oversight of the staff; credentialing of physicians who saw patients in the Facility; development and implementation of nursing staff in-services; development and implementation of all pertinent policies and procedures; monitoring customer satisfaction via surveys; performing mock surveys through use of regional and local employees; risk management; corporate and regulatory compliance; quality of care assessment; licensure and certification; controlling accounts payable and receivable; setting guidelines in place that controlled whether or not residents were discharged based on certain clinical condition criteria; development and implementation of reimbursement strategies; retaining contract management, physician therapy and dietary services; dictating census and payor source quotas for admission to the facility; and employing Facility-level, regional and corporate staff who together operated the facility.

36.    Defendants monitored the care being provided at their nursing homes, including the Facility, by and through their respective members, managers, regional personnel, board of directors and corporate officers, who did so by utilizing Department of Health Survey Results, Customer Satisfaction Surveys, Mock Surveys, internal quality indicator reports, and CMS Quality Indicator Reports.

37.    Defendants exercised ultimate authority over all budgets and had final approval over the allocation of resources for staffing, supplies, capital expenditures, and operations of their nursing homes, including the Facility.

38.    Defendants had the duty and responsibility to establish policies and procedures that addressed the clinical and daily needs of the residents of the Facility, including Ollie Taylor,

Jr. Defendants had the duty and responsibility to ensure that those policies and procedures were implemented.

39.     Defendants had the duty and responsibility to ensure those policies and procedures addressed the needs of the residents of the Facility, which included Ollie Taylor, Jr. This includes policies and procedures addressing the recognition and/or treatment of Ollie Taylor, Jr.'s medical conditions, so as to ensure that timely and appropriate care was provided for these conditions whether at the Facility, or obtained from other medical providers.

40.     Defendants, acting through their administrators, members, managers, board of directors and corporate offices, had the duty and responsibility to oversee the standard of professional practice by the members of their staff at the Facility, including regarding the conduct at issue herein.

41.     Defendants had a duty to employ competent, qualified and trained staff so as to ensure that proper care, treatment and services were provided to all residents of the Facility, including Ollie Taylor, Jr.

42.     Defendants had a duty and responsibility to ensure that the Facility and its residents, including Ollie Taylor, Jr., were provided with sufficient staff and resources to guarantee the timely recognition and appropriate treatment of their medical, nursing and/or custodial needs whether within the Facility or from other medical care providers.

43.     Knowing that staffing costs were the largest part of their nursing homes' budgets, Defendants chose to operate and/or manage the Facility to maximize their profits at expense of the care provided to their residents, including Ollie Taylor, Jr., by negligently, intentionally and/or recklessly mismanaging and/or reducing staffing levels at the Facility below the levels needed to sufficiently meet the needs of the residents, including Ollie Taylor, Jr.

16

44.     Despite their knowledge of the likelihood of harm due to these insufficient staffing levels, and despite complaints of insufficient staffing from staff members, residents and their families, Defendants recklessly and/or negligently disregarded the consequences of their actions, and/or negligently caused staffing levels at the Facility to be set at a level that did not allow staff to sufficiently meet the needs of the residents, including Ollie Taylor, Jr.

45.     Defendants knew that residents with greater health problems and higher acuity are a source of higher reimbursement rates, from governmental programs including Medicare, because of their complex medical needs.    Upon present information and belief, such reimbursements from governmental programs, including Medicaid and Medicare, are Defendants primary source of income.

46.     Possessing this knowledge, Defendants intentionally increased the numbers of residents at the Facility with higher acuity and complex medical needs.

47.     Defendants knew, or should have known, that this increase in the acuity and care needs for the residents would significantly increase the need for additional staff, services, resources and supplies necessary to provide these residents with adequate care and meet their needs, including Ollie Taylor, Jr.

48.     Despite the knowledge of the increased needs for additional staff because of the increased acuity levels of the Facility residents, including Ollie Taylor, Jr., Defendants knowingly disregarded those acuity levels and knowingly established staffing levels that created recklessly high resident to nurse ratios and recklessly high resident to certified nurse aides ratios.

49.     Defendants knowingly disregarded the increased resident acuity levels and the increased time required by the staff to provide activities of daily living, medications, and treatments.

17

50.    The acts and omissions of the Defendants were motivated by a desire to decrease the costs and increase the profits of their nursing homes, including the Facility.

51.    Defendants accomplished these goals by knowingly and recklessly reducing the expenditures for needed staffing, training, care and supplies, at the expense of the healthcare of the residents and despite the knowledge that this cost-cutting would inevitably lead to severe injuries, such as those suffered by Ollie Taylor, Jr..

52.    Defendants deliberately increased the amount staff during Department of Health inspections in order to give the appearance of compliance with staffing regulations.  Defendants would then decrease the number of staff after the inspections ended.

53.    The aforementioned acts and omissions directly caused injury to Ollie Taylor, Jr. and were known to the Defendants.

54.    Defendants knowingly sacrificed the quality of care received by all residents, including Ollie Taylor, Jr., by failing to manage, care, monitor, document, chart, prevent, diagnose and/or treat the injuries and illnesses suffered by Ollie Taylor, Jr., as described herein, which included multiple pressure ulcers, wound to the penis, multiple urinary tract infections, urosepsis, MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, severe pain and death.

55.    At the time and place of the incidents hereinafter described, the Facility whereupon the incidents occurred was individually, collectively, and/or through joint venture, owned, possessed, controlled, managed, operated and maintained under the exclusive control of the Defendants.

56.    At all times material hereto, the Defendants were operating personally or through their agent, servants, workers, employees, contractors, subcontractors, staff, and/or principals,

18

who acted with actual, apparent and/or ostensible authority, and all of whom were acting within the course and scope of their employment and under the direct and exclusive control of the Defendants.

57.     The aforementioned incidents were caused solely and exclusively by reason of the negligence, carelessness and recklessness of the Defendants, their agents, servants, contractors, subcontractors, staff and/or employees and was due in no part to any act or failure to act on the part of Ollie Taylor, Jr..

58.     Defendants, their agents, servants, contractors, subcontractors, staff and/or employees are/were, at all times material hereto, licensed professionals/professional corporation and/or businesses and the Plaintiff is asserting professional liability claims against them.

59.     In addition to all other claims and demands for damages set forth herein, Plaintiff is asserting claims for ordinary negligence, custodial neglect and corporate negligence against the Defendants herein, as each of the entities named as Defendants herein are directly and vicariously liable for their independent acts of negligence, for their acts of general negligence, and for their acts of general corporate negligence.

## B.     Injuries of Ollie Taylor, Jr. at the Facility

60.     Upon admission to the Facility and during the relevant time period, Ollie Taylor, Jr. was dependent upon the staff for his physical, mental, psycho-social, medical nursing and custodial needs, requiring total assistance with activities of daily living, and he had various illnesses and conditions that required evaluation and treatment.

61.     Defendants knew or should have known that Ollie Taylor, Jr. was at risk for multiple pressure ulcers, wound to the penis, multiple urinary tract infections, urosepsis, MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, severe pain and death.

19

62.     Defendants continuously engaged in a pattern of care replete with harmful and injurious commissions, omissions and neglect as described herein.

63.     Defendants, through their acts and omissions, deprived Ollie Taylor, Jr. of adequate care, treatment, food, water and medicine and caused him to suffer numerous illnesses and injuries, which included multiple pressure ulcers, wound to the penis, multiple urinary tract infections, urosepsis, MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, severe pain and death.

64.     As a result of the severity of the negligence Defendants inflicted upon Ollie Taylor, Jr., the deterioration of his health and physical condition was negligently accelerated and resulted in both physical and emotional injuries, a loss of dignity, degradation, emotional trauma, severe pain, suffering and mental anguish, and unnecessary hospitalizations.

65.     Mr. Taylor was admitted to the Facility on June 10, 2010.

66.     On September 19, 2012, it is noted that Mr. Taylor's skin is intact.

67.     On January 23, 2013, it is noted that Mr. Taylor's intake is good and his weight is stable.

68.     On February 27, 2013, Mr. Taylor's penis was swollen and painful to the touch.

69.     That day Mr. Taylor is admitted to Albert Einstein Medical Center ("AEMC") for dehydration.  It was also noted that Mr. Taylor was suffering from a UTI, contracted at the Facility.

70.     Upon readmission to the Facility on March 1, 2013, it is noted that Mr. Taylor has a "pink area to right buttocks."  A Braden score is completed that same day which indicates that Mr. Taylor is at a High Risk for the development of pressure ulcers.  We see no measurements or assessment of this pressure ulcer by the nursing staff when it occurred until it resolves.

20

71.     On March 10, 2013, it is noted that the tip of Mr. Taylor's penis is excoriated and painful to the touch.

72.     On April 11, 2013, Mr. Taylor's albumin is 3.6.

73.     As of April 17, 2013, Mr. Taylor needs extensive assistance with his ADLs and is a one person physical assist.

74.     On April 30, 2013, it is noted that Mr. Taylor "has no skin issues."

75.     On May 21, 2013, Mr. Taylor is crying in pain due to the opening on his penis and there is blood present.

76.     On May 23, 2013, while providing care an opening is noted on Mr. Taylor's penis.

77.     On June 29, 2013, following multiple days of sediment in his urine there is a change in Mr. Taylor's condition. There are now copious amounts of sediment with pus coming from the penis, pasty looking urine and penis is swollen. Labs were ordered.

78.     On July 3, 2013, it is determined that Mr. Taylor has an infection.  100,000+ Gram negative rods with 2 organisms identified, Morganella Morganii and Providencia Stuartii.

79.     On July 24, 2013, it is noted that Mr. Taylor's skin issue has resolved.

80.     On October 16, 2013, it is noted that Mr. Taylor's has no skin issues.

81.     On December 28, 2013, Mr. Taylor is admitted to AEMC once again for dehydration and it is found he has a UTI and urosepsis.

82.     The hospital notes on admission that Mr. Taylor's "sacral area intact but noted with healed ulcer. To be repositioned every 2 hours. Left heel ulcer (blister) 5.5 x 5.5 cm." There is absolutely no mention of these pressure ulcers in the Facility chart prior to his admission

21

to AEMC. Clearly, Defendants were not properly assessing and/or treating Mr. Taylor for these wounds.

83.    On January 1, 2014, while at AEMC, Mr. Taylor has a DTI to coccyx measuring 4.5 x 5.0 cm, right buttocks DTI 2.5 x 2.5 cm and left heel serous filled blister-intact.

84.    On January 2, 2014, while at AEMC, Mr. Taylor has a Stage II coccyx pressure ulcer measuring 5.0 x 5.0 cm, right buttock Stage II pressure ulcer measuring 2.5 x 2.5 cm and left heel blister measuring 6.0 x 5.0 cm.

85.    Upon discharge from AEMC on January 2, 2014, an order was given by the physician to have the Facility ensure that "patient drink at least six, 8 oz glasses of fluids a day and to please consult nutrition and perform calorie counts." There is no evidence this order was followed. Mr. Taylor did not have a 24 hour calorie count until January 14, 2014.

86.    Upon readmission to the Facility, it is noted that a Stage II sacrum pressure ulcer is present that measures 2.5 x 2.0 cm. Left heel noted to have intact fluid filled blister. No mention of the right buttocks pressure ulcer.

87.    On January 3, 2014, the Facility notes open area to sacrum 2.5 x 2.0 cm and left heel 5.0 x 1.0 cm fluid filled blister. Still no mention of the right buttocks ulcer.

88.    By January 9, 2014, the sacral pressure ulcer and heel pressure ulcer have deteriorated significantly. It is noted that Mr. Taylor has a "large unstageable sacral wound 9.0 x 9.0 x 0.5 cm with yellow slough, odorous [and] large unstageable blister to left heel." No indication that physician was notified of the odor.

89.    On the same date a nurse note states "will follow up with nursing staff regarding turn and reposition program." This statement combined with the drastic deterioration of Mr.

22

Taylor's wounds clearly indicate that he was not being turned and repositioned for a period of time.

90.     On January 10, 2014, Mr. Taylor developed a pressure ulcer area to the tip of his penis from poor catheter care. There was no assessment or measurement completed related to this pressure ulcer.

91.     On January 14, 2014, the sacral ulcer is noted to be unstageable and 9.0 x 9.0 x 0.5 with a slight odor. No indication that the physician was notified of the odor.

92.     On January 16, 2014, finally it is noted that "Resident is now on turn and repo schedule and has low air loss mattress." Additionally, it is noted that the sacral ulcer is "oblong in shape 3.0 x 2.0 x 1.0 faint odor and slough." Mr. Taylor's left heel wound also declined and is described as a DTI measuring 6.0 x 5.0 cm.

93.     Additionally, on that day, Mr. Taylor developed another pressure ulcer. This one was a Stage II ulcer located on his right ischium and measured 1.5 x 1.0 cm. However, it is noted to also have measurements of 2.0 x 2.0 x. 0.3 cm on the same day.

94.     By January 22, 2014, Mr. Taylor's sacral pressure ulcer bridged into two separate areas. Identified as Stage IV pressure ulcer areas, Area #1 measured 3.0 x 3.0 cm and Area #2 measured 3.0 x 3.0 cm. The right ischial wound is a Stage III measuring 1 x 1 cm and the left heel is a DTI measuring 6 x 5 cm.

95.     On February 5, 2014, the wound team sees Mr. Taylor. He has full thickness ulceration to 2 sacral sites measuring 3 x 3 cm. Wound base 100% slough; scant non odorous drainage. Partial thickness ulceration of right buttocks measuring 1.5 x 1.5 cm. Wound base clean, pink, scant non odorous serous drainage. Full thickness wound of left medial heel measuring 6 x 5cm. Discolored intact blood filled blister roof, no drainage.

23

96.     On February 13, 2014, it is discovered that Mr. Taylor had MRSA in his urine.  It is apparent this was contracted during his time in the Facility.

97.     On March 13, 2014, Mr. Taylor's sacral ulcer is still 2 wounds:  A1 – measuring 2.0 x 2.0 x 0.3 unstageable with 60% slough and A2 – measuring 3.0 x 3.0 with 100% slough and full thickness loss.  The right ischial wound was 0.1 x 0.1 with partial thickness loss and the left heel was 6.0 x 4.0 with full thickness loss.

98.     On March 19, 2014, Mr. Taylor's labs show a sodium of 165, BUN 54, Creatinine 1.9 and an albumin of 2.9, all of which indicate dehydration and malnutrition.  Additionally, his white blood cell count is high and his urine is cloudy and amber colored.

99.     It is noted on March 20, 2014, that Mr. Taylor is experiencing unplanned weight loss.

100.    On March 21, 2014, Mr. Taylor is again admitted to AEMC for hypernatremia secondary to dehydration.  Mr. Taylor also has another UTI.  The ED MD stated that Mr. Taylor "has been admitted here for similar picture of dehydration."

101.    Mr. Taylor is discharged back to the Facility on March 28, 2014.  It is indicated that he is readmitted with a sacral ulcer, right heel scab, left heel ulcer and right post shoulder open area.

102.    There are no further measurements of the wounds during his stay at the Facility.

103.    On March 29, 2014, a progress note stated "Sacral wound, right heel scab, left heel red, soft and boggy, and right post shoulder open area."  There is no mention of a description or measurement of the right shoulder wound in the record.

104.    On March 30, 2014, it was noted that Mr. Taylor had a fever of 100.  Finally the nursing staff realized Mr. Taylor "need wound consult, foul odor with treatment noted."

24

105.    Mr. Taylor had a high WBC indicative of infection.

106.    The physician was not notified of this change in Mr. Taylor's wound nor was a request for a wound consult noted.

107.    On April 4, 2014, there is an order for left shoulder wound treatment. There is no description or measurement of this shoulder wound, much like the right shoulder.

108.    Additionally on April 4th, it is noted that Mr. Taylor has a poor appetite and weight loss. There is a physician order for A&D ointment to his lips every shift for dry and cracked lips. This is further indication that the Facility still is not taking care of Mr. Taylor's dehydration.

109.    Mr. Taylor passed away on April 6, 2014.

110.    Defendants were fully aware of Ollie Taylor, Jr.' medical history, medical conditions and co-morbidities and the level of nursing care he would require while a resident at the Facility.

111.    The medical record for Ollie Taylor, Jr. while he was a resident at Defendants' Facility includes and evidences missing and incomplete documentation.

112.    The Defendants negligently caused severe injury to Ollie Taylor, Jr. when they: mismanaged the Facility; under-budgeted the Facility; understaffed the Facility; failed to train or supervise the Facility's employees; failed to provide adequate and appropriate healthcare as described herein; engaged in incomplete, inconsistent and fraudulent documentation; failed to develop an appropriate care plan; failed to ensure the highest level of physical, mental and psychosocial well-being; failed to complete any assessments on Mr. Taylor for dehydration; failed to monitor his fluid intake and out through his stay; failed to monitor his skin integrity; failed to report abnormal labs to the physician; failed to turn and reposition him every two hours;

25

failed to offload pressure from his heels; failed to notify his physician of significant changes in condition; failed to notify his physician that he was dehydrated; failed to provide proper catheter care; failed to monitor his caloric intake; failed to prevent MRSA; failed to prevent urosepsis; failed to prevent dehydration; failed to care plan appropriately for contractures, dehydration, malnutrition, Foley care, oral hygiene, severe pain, infections, and skin breakdown; which, together, caused Ollie Taylor, Jr. to suffer multiple pressure ulcers, wound to the penis, multiple urinary tract infections, urosepsis, MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, severe pain and death.

113.    As a result of the negligence, carelessness and recklessness of the Defendants herein described, Ollie Taylor, Jr. was caused to suffer serious and permanent injuries as described herein, to, in and about his body and possible aggravation and/or activation of any pre-existing conditions, illnesses, ailments, or diseases he had, and/or the accelerated deterioration of his health, physical and mental condition, and a loss of the ordinary pleasures of life, a loss of dignity, humiliation, and more particularly, but without limitations, multiple pressure ulcers, wound to the penis, multiple urinary tract infections, urosepsis, MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, along with other body pain and damage, as well as anxiety, reaction and injury to his nerves and nervous system, some or all of which were permanent, together with other medical complications including severe pain and death.

26

## COUNT ONE

**Norman Taylor, as Administrator of the Estate of Ollie Taylor, Jr., deceased**
**v.**
**GGNSC Philadelphia LP, d/b/a Golden Living Center – Stenton; GGNSC Philadelphia GP LLC; GGNSC Holdings, LLC; Golden Gate National Senior Care, LLC; GGNSC Equity Holdings, LLC; GGNSC Administrative Services, LLC; GGNSC Clinical Services, LLC; Golden Gate Ancillary, LLC; Karen Eileen Thomas, NHA; Robyn Annette Marrell-Williams, RN; Patrice Michelle Glover, RN**

114. Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

115. Upon accepting Ollie Taylor, Jr. as a resident at the Facility, Defendants individually and jointly assumed direct, non-delegable duties to Ollie Taylor, Jr. to provide him with adequate and appropriate healthcare, as well as basic custodial and hygiene services, as set forth herein.

116. If Defendants were unable or unwilling to meet the needs of Ollie Taylor, Jr., they had an affirmative duty and legal obligation to discharge Ollie Taylor, Jr. from the Facility.

117. Defendants owed a non-delegable duty to provide adequate and appropriate medical, skilled nursing, rehabilitation, physical therapy, occupational therapy, speech therapy, activities of daily living and other custodial care service and supervision to Ollie Taylor, Jr. and other residents at the Facility, such as reasonable caregivers would provide under similar circumstances.

118. Defendants each owed a non-delegable duty to the Facility's residents, including Ollie Taylor, Jr., to hire, train and supervise their employees so as to ensure that the Facility was operated and services were provided to Defendants' residents in a safe and reasonable manner.

119. Defendants, by and through their agents, employees, and/or servants each owed a duty of care to Ollie Taylor, Jr. to exercise the appropriate skill and care of licensed physicians,

27

nurses, certified nurse aides, therapy providers, rehabilitation providers, dietary personnel, Directors of Nursing, and/or Nursing Home Administrators.

120.    Defendants each owed the following duties to Ollie Taylor, Jr.: the duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; to select, train and retain only competent staff; to oversee and supervise all persons who practiced medicine, nursing, rehabilitation and/or therapy within the Facility; to staff the Facility with personnel at sufficient numbers and training to provide care and services to meet the needs of the residents; a duty to ensure the respect and dignity of the residents; the duty to adequately fund the facility and not to under-budget for staffing and resources; to formulate, implement, update and enforce policies and procedures to ensure that all residents receive quality care as required by the applicable standards of care; a duty to take adequate measures to remedy known problems in the delivery of hygiene and custodial care as well as in the provision of medical, skilled nursing, rehabilitation, wound care, occupational therapy and speech therapy; a duty to notify residents, their families and/or representatives of the fact that Defendants were unable to provide adequate care and services when Defendants knew, or should have known, of their deficiencies in providing such care and services; a duty to refuse to admit residents that Defendants knew or should have known they were unable to provide the necessary care and services required by the residents; a duty to not admit more residents than they could safely provide the necessary care and services for that the residents required; a duty to keep the Facility's residents free from abuse and neglect, including Ollie Taylor, Jr..

121.    Defendants failed to uphold and fulfill the aforementioned duties which proximately caused severe injuries to Ollie Taylor, Jr. as detailed herein.

28

122.     In addition to the direct acts and omissions of the corporate Defendants, the Defendants also acted through their agents, servants and employees, who were in turn acting within their course and scope of their employment under the direct supervision and control of Defendants.

123.     Upon present information and belief, at all times material hereto, Defendants authored, produced and/or received multiple and frequent reports detailing the number, frequency, factual circumstance and types of injuries, illnesses, and infections sustained by Ollie Taylor, Jr. and the other residents of the Facility.

124.     Despite being made aware of this information, including those specific to Ollie Taylor, Jr., Defendants failed to take actions to prevent the occurrence of these types of injuries, illnesses and infections.

125.     Defendants knew, or should have known, of the aforementioned issues that were occurring with the care of Ollie Taylor, Jr., as they were placed on actual and/or constructive notice of the same, through their own reports, CMS Quality Indicator Reports and Federal and Pennsylvania Department of Health Surveys.

126.     Defendants, as the corporate members, managers, owners, and/or directors of the Facility, breached their duties and were, therefore, negligent, careless and reckless in their obligations to Ollie Taylor, Jr.

127.     Defendants' corporate conduct was independent of the negligent conduct of the employees of the Facility, and was outrageous, willful and wanton and exhibited a reckless indifference to the health and well-being of the residents, including Ollie Taylor, Jr.

128.     Defendants' breaches of duties, negligence, professional negligence, corporate negligence, carelessness and recklessness, individually, vicariously and/or acting by and through

29

their officers, directors, members, managers, physicians, physicians' assistants, nurses, certified nurse aides, rehabilitation personnel, therapy personnel, dietary personnel, regional and corporate staff, who examined, treated and/or communicated the condition of Ollie Taylor, Jr., and through the administrative personnel responsible for hiring, retaining and/or dismissing staff, staff supervision and policy making and enforcement, as well as any agents servants, employees, contractors, subcontractors and/or consultants of Defendants were exhibited in the following acts and omissions in the care and treatment of Ollie Taylor, Jr.

129.    Defendants failed to hire, utilize, train and retain sufficient staff to meet the needs of the residents, including Ollie Taylor, Jr., which caused Ollie Taylor, Jr. to suffer from multiple pressure ulcers, wound to the penis, multiple urinary tract infections, urosepsis, MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, severe pain and death.

130.    Defendants failed to ensure that each resident, including Ollie Taylor, Jr., received, and that the Facility provided, the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial well-being, in accordance with the comprehensive assessment and plan of care.

131.    Defendants failed to provide adequate hygiene to prevent infection and to keep Ollie Taylor, Jr. clean and preserve his dignity.

132.    Defendants failed to notify the physician of ongoing elevated temperatures in a timely manner.

133.    Defendants failed to monitor medications for efficacy.

134.    Defendants failed to make timely and/or appropriate recommendations in tube feedings/flushes to address abnormal lab values indicating dehydration.

30

135.    Defendants failed to ensure assessment of Ollie Taylor, Jr. by a qualified health professional, namely a registered dietician.

136.    Defendants failed to develop and implement appropriate infection control policies, procedures and techniques for Ollie Taylor, Jr.

137.    Defendants failed to turn and reposition Ollie Taylor, Jr. at least once every two hours, and more often if and when necessary.

138.    Defendants failed to offload pressure from Ollie Taylor, Jr.' heels.

139.    Defendants failed to accurately, adequately and consistently monitor, stage, treat and provide care to Ollie Taylor, Jr.' pressure sores.

140.    Defendants failed to ensure that Ollie Taylor, Jr. did not suffer from new pressure sores and failed to ensure that existing pressure sores did not worsen, as required by the standard of care.

141.    Defendants failed to ensure that Ollie Taylor, Jr. did not needlessly suffer from preventable and treatable pain.

142.    Defendants failed to provide timely and appropriate catheter care.

143.    Defendants failed to ensure that Ollie Taylor, Jr. received his physician-ordered medications in accordance with his physician's orders.

144.    Defendants failed to ensure that Ollie Taylor, Jr. received his physician-ordered treatments in accordance with his physician's orders.

145.    Defendants failed to ensure Ollie Taylor, Jr. did not receive injuries to his penis.

146.    Defendants failed to ensure that Ollie Taylor, Jr. had appropriate oral hygiene.

147.    Defendants failed to timely and appropriately notify Ollie Taylor, Jr.' physician(s) and consulting specialists when he experienced significant changes in his condition, contributing

31

to Ollie Taylor, Jr.'s injuries and illnesses, including multiple pressure ulcers, wound to the penis, multiple urinary tract infections, urosepsis,  MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, severe pain and death.

148.    Defendants failed to obtain new or modified physician orders when Ollie Taylor, Jr.'s changes in condition required the same.

149.    Defendants failed to timely and appropriately notify Ollie Taylor, Jr.'s family and personal representatives when he experienced significant changes in his condition, contributing to Ollie Taylor, Jr.'s injuries and illnesses, including multiple pressure ulcers, wound to the penis, multiple urinary tract infections, urosepsis, MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, severe pain and death.

150.    Defendants failed to provide adequate and appropriate nutrition and hydration to prevent Ollie Taylor, Jr. from suffering weight loss, dehydration, and malnutrition.

151.    Defendants failed to accurately and consistently document Ollie Taylor, Jr.'s needs and the care and services provided to him in response to such needs.

152.    Defendants failed to prevent fraudulent documentation and allowing Defendants' staff to chart that they provided care to Ollie Taylor, Jr. on non-existent days, on days the charting staff member was not actually at work, and/or on days when Ollie Taylor, Jr. was not even in Defendants' Facility.

153.    Defendants failed to ensure that Ollie Taylor, Jr. did not develop serious and permanent injuries to, in and about his body and possible aggravation and/or activation of any pre-existing conditions, illnesses, ailments, or disease he had, and/or accelerated the deterioration of his health, physical and mental condition, and more particularly, multiple pressure ulcers,

wound to the penis, multiple urinary tract infections, urosepsis, MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, severe pain and death.

154.    Defendants failed to respond in a timely manner with appropriate medical, nursing and custodial care when Ollie Taylor, Jr. was injured, including when he experienced multiple pressure ulcers, wound to the penis, multiple urinary tract infections, urosepsis, MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, severe pain and death.

155.    Defendants failed to ensure Ollie Taylor, Jr.'s comprehensive care plans were developed, reviewed and updated as required by the standard of care, including with significant changes in condition.

156.    Defendants failed to develop and implement an appropriate, comprehensive and individualized care plan for Ollie Taylor, Jr. that included measurable objectives and timetables to meet his medical, nursing, custodial, mental and psychosocial needs as identified in the comprehensive assessment.

157.    Defendants failed to administer the Facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident, including Ollie Taylor, Jr.

158.    Defendants, as members of the Governing Body, were legally responsible for establishing and implementing policies regarding the management and operation of the facility, yet they failed to do so as indicated throughout this Second Amended Complaint.

159.    Defendants, as members of the Governing Body, failed to discharge their legal and lawful obligations by failing to ensure that the rules and regulations, designed to protect the health, safety and well-being of the residents, including Ollie Taylor, Jr., were complied with on an ongoing basis.

160.     Defendants, as members of the Governing Body, failed to ensure that appropriate corrective measures were implemented to correct problems concerning inadequate resident care, including the care of Ollie Taylor, Jr.

161.     Defendants failed to oversee and supervise all persons who practiced medicine, skilled nursing, rehabilitation, occupation therapy, speech therapy, dietary services and custodial care in the Facility who failed to provide adequate and appropriate healthcare to prevent Ollie Taylor, Jr. from suffering from multiple pressure ulcers, wound to the penis, multiple urinary tract infections, urosepsis, MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, severe pain and death.

162.     Defendants failed to formulate, implement and enforce adequate policies and procedures to prevent Ollie Taylor, Jr. from suffering from multiple pressure ulcers, wound to the penis, multiple urinary tract infections, urosepsis, MRSA, dehydration, malnutrition, sores inside of his mouth, wound infection, severe pain and death.

163.     Defendants failed to refer Ollie Taylor, Jr. to the necessary medical specialists in a timely manner who would have properly diagnosed and/or treated his condition.

164.     Defendants failed to implement a budget that properly funded the Facility and allowed the Facility to provide adequate and appropriate healthcare to its residents, including Ollie Taylor, Jr., necessarily including staffing and supplies.

165.     Defendants grossly and recklessly understaffed the facility.

166.     Defendants failed to take necessary and appropriate steps to remedy the continuing problems at the Facility that Defendants knew, or should have known, were occurring with Ollie Taylor, Jr.'s care, which included the need to increase the number of employees, hiring skilled and/or trained employees, providing adequate training to the employees,

34

monitoring the conduct of the employees, and/or changing policies and procedures to improve resident care.

167.    Defendants failed to maintain compliance with the governmental regulations, including 42 C.F.R. § 483.101 *et seq.* and Title 28 Pa.Code § 201.1 *et seq.*, to which Defendants are required to adhere and to which their delivery of care is compared during Federal and Pennsylvania Department of Health Annual and Complaint-based surveys, including 42 C.F.R. §§ 483.20, 483.10(b)(11), 483.20(b)(2)(ii), 483.20(k), 483.25, 483.15, 483.10, 483.13(b), 483.13(c)(2), 483.15(a), 483.25(e), 483.25(i), 483.25(j), 483.25(m), 483.30, 483.35, 483.65, 483.75(l), 483.70(f); and, 28 Pa.Code §§ 201.29(c), 211.2(a) & (b), 211.5(f), 211.6(b), 211.10(d), 211.2(c) & (d), 211.11, 211.10, 201.2, 201.29(j), 211.10(d), 211.12, and 211.5.

168.    In committing the acts and omissions herein, Defendants acted in a grossly negligent manner, with reckless indifference to the rights and safety of Ollie Taylor, Jr.

169.    Upon information and belief, Defendants owners, officers, directors, partners, members and managers were made aware of Federal and Pennsylvania Department of Health survey results and placed on notice of the care issues and/or physical/environmental issues of their nursing homes, including the Facility.

170.    Upon information and belief, Defendants, including their owners, officers, directors, partners, members, managers and employees, knew they had been cited by Federal and Pennsylvania Department of Health surveyors for deficiencies regarding the Facility prior to, during and after the residency of Ollie Taylor, Jr., and were placed on notice as to care issues and/or physical/environmental issues at the Facility.

171.    As a direct and proximate result of Defendants' acts and/or omissions, and their breach of their duty of care, negligence, carelessness and recklessness, Ollie Taylor, Jr. suffered

35

(a) severe permanent physical injuries resulting in severe pain, suffering and disfigurement (b) mental anguish, embarrassment, humiliation, degradation, emotional distress, and loss of personal dignity, (c) loss of capacity for enjoyment of life, (d) expense of otherwise unnecessary hospitalizations, medical expenses and residency at the Facility, (e) aggravation of his pre-existing medical conditions, (f) severe pain, and (g) death.

172.    In causing the aforementioned injuries, Defendants knew, or should have known, that Ollie Taylor, Jr. would suffer such harm.

173.    Defendants' conduct was intentional, outrageous, willful and wanton, and exhibited a reckless indifference to the health and well-being of Ollie Taylor, Jr.

174.    Defendants' conduct justifies an award of punitive damages.

**WHEREFORE**, Plaintiff, Norman Taylor, as Administrator of the Estate of Ollie Taylor, Jr., deceased, respectfully requests that judgment be entered in his favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00); whichever is greater, together with punitive damages, costs, and any other relief that this Honorable Court deems appropriate given the circumstances. A jury trial is demanded.

## COUNT TWO

**Norman Taylor, as Administrator of the Estate of Ollie Taylor, Jr., deceased**
**v.**
**GGNSC Philadelphia LP, d/b/a Golden Living Center – Stenton; GGNSC Philadelphia GP LLC; GGNSC Holdings, LLC; Golden Gate National Senior Care, LLC; GGNSC Equity Holdings, LLC; GGNSC Administrative Services, LLC; GGNSC Clinical Services, LLC; Golden Gate Ancillary, LLC; Karen Eileen Thomas, NHA; Robyn Annette Marrell-Williams, RN; Patrice Michelle Glover, RN**

175.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

36

176.     Plaintiff brings this action on behalf of the decedent's estate under and by virtue of the Pennsylvania Judiciary Act, 42 Pa.C.S. 8302, also known as the Survival Statute, to recover all damages legally appropriate thereunder.

177.     Plaintiff's decedent, Ollie Taylor, Jr., did not bring any action during his lifetime, nor has any other action been commenced on behalf of the Deceased against Defendants herein.

178.     The following persons are entitled to share under this cause of action in the estate of said Decedent: Norman Taylor, Stacy Townsend, Stephanie Taylor, Eric Taylor, and Misty Taylor.

179.     Plaintiff hereby claims damages for the pain, suffering and inconvenience suffered by Plaintiff's decedent, Ollie Taylor, Jr. up to and including the time of his death, all of which was caused by Defendants' breach of duties, negligence, carelessness and recklessness.

180.     Plaintiff also hereby claims any and all damages for the fright and mental suffering attributable to the peril leading to the death of Plaintiff's decedent, Ollie Taylor, Jr., all of which was caused by Defendants' breach of duties, negligence, carelessness and recklessness.

**WHEREFORE**, Plaintiff, Norman Taylor, as Administrator of the Estate of Ollie Taylor, Jr., deceased, respectfully requests that judgment be entered in his favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00); whichever is greater, together with punitive damages, costs, and any other relief that this Honorable Court deems appropriate given the circumstances.   A jury trial is demanded.

37

## COUNT THREE

**Norman Taylor, as Administrator of the Estate of Ollie Taylor, Jr., deceased**
**v.**
**GGNSC Philadelphia LP, d/b/a Golden Living Center – Stenton; GGNSC Philadelphia GP**
**LLC; GGNSC Holdings, LLC; Golden Gate National Senior Care, LLC; GGNSC Equity**
**Holdings, LLC; GGNSC Administrative Services, LLC; GGNSC Clinical Services, LLC;**
**Golden Gate Ancillary, LLC; Karen Eileen Thomas, NHA; Robyn Annette Marrell-**
**Williams, RN; Patrice Michelle Glover, RN**

181.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

182.    Defendants contributed to and/or caused the death of Plaintiff's decedent, Ollie Taylor, Jr., through their own negligence, carelessness, and reckless conduct as well as through their agents, servants, and/or employees. As a result, Ollie Taylor, Jr. died on April 6, 2014.

183.    Plaintiff's decedent, Ollie Taylor, Jr., did not bring any action during his lifetime, nor has any other action been commenced on behalf of the Deceased against Defendants herein.

184.    Plaintiff's decedent, Ollie Taylor, Jr., left the following survivors: Norman Taylor.

185.    Plaintiff was the son of Ollie Taylor, Jr., and was appointed Administrator of the Estate of Ollie Taylor, Jr., on August 6, 2014, by the Register of Wills of Philadelphia County, PA.

186.    Plaintiff brings this action on behalf of the decedent's estate under and by virtue of the Pennsylvania Judiciary Act, 42 Pa.C.S. 8301, known as the Wrongful Death Statute, to recover any and all damages legally appropriate hereunder.

187.    The following persons have independent causes of action and are entitled to recover as Wrongful Death beneficiaries of the Decedent: Norman Taylor.

188.    Plaintiff, and the aforementioned Wrongful Death beneficiaries, claim damages for the pecuniary loss suffered by the decedent's survivors as a result of the death of Ollie Taylor, Jr. as well as for the reimbursement of hospital, nursing, medical, and funeral expenses, and the expenses of administration necessitated by reason of Ollie Taylor, Jr.'s injuries which caused his death, and other expenses incurred in connection therewith.

189.    Additionally, as a result of Ollie Taylor, Jr.'s death, the Wrongful Death beneficiaries have been deprived of the care, comfort, companionship, society, tutelage and assistance they would have received from Ollie Taylor, Jr. had he lived the remainder of his natural life.

**WHEREFORE**, Plaintiff, Norman Taylor, as Administrator of the Estate of Ollie Taylor, Jr., deceased, respectfully requests that judgment be entered in his favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00); whichever is greater, together with punitive damages, costs, and any other relief that this Honorable Court deems appropriate given the circumstances.  A jury trial is demanded.

Respectfully submitted,

**REDDICK MOSS, PLLC**

Dated: _1-8-15_

Ian T. Norris, Esquire
2 Penn Center
1500 John F. Kennedy Blvd., Suite 1045
Philadelphia, PA 19102
ian@reddickmoss.com
(215) 302-6140
*Attorney for Plaintiff*

39

## VERIFICATION

The undersigned, having read the attached Second Amended Complaint, verifies that the within Second Amended Complaint is based on information furnished to counsel, which information has been gathered by counsel in the course of this lawsuit.  Signer verifies that signer has read the within Second Amended Complaint and that it is true and correct to the best of signer's knowledge, information and belief.  This Verification is made subject to the penalties of 18 Pa.C.S. Section 4904, relating to unsworn falsification to authorities.

Date: _1- 8 - 15_

By: _____
Ian T. Norris, Esq.

## CERTIFICATE OF SERVICE

I, Ian T. Norris, Esquire, attorney for Plaintiff, attest and certify that a copy of Second

Amended Complaint was served via regular mail, upon all counsel of record on the date listed

below.

Jacqueline M. Carolan, Esquire
**Fox Rothschild LLP**
2000 Market Street, 20th Floor
Philadelphia, PA 19103
*(Attorney for Defendants)*

---

Defendants below will be served via Summons:

**GOLDEN GATE ANCILLARY, LLC**
7160 Dallas Parkway, Suite 400
Plano, Texas 75024
And
**KAREN EILEEN THOMAS, NHA**
3911 Elson Road
Brookhaven, Pennsylvania 19015
and
**ROBYN ANNETTE MARRELL-
WILLIAMS, RN**
155 E. Godfrey Avenue, Apt. 303
Philadelphia, Pennsylvania 19120
and
**PATRICE MICHELLE GLOVER, RN**
230 E. Walnut Park Drive
Philadelphia, Pennsylvania, 19120

REDDICK MOSS, PLLC

Dated: *1-8-15*          BY: _____
                              Ian T. Norris, Esquire