IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NORMAN TAYLOR,

                   Plaintiff,

    v.

GGNSC PHILADELPHIA, LP d/b/a
GOLDEN LIVING CENTER CENTER-
STENTON et al.,

                   Defendants.

CIVIL ACTION
NO. 14-7100

**OPINION**

**Slomsky, J.**                                                            **September 22, 2015**

**I.      INTRODUCTION**

This case involves allegations of nursing home negligence that resulted in the death of Ollie Taylor, Jr.  Plaintiff Norman Taylor, the son of Ollie Taylor, Jr. and the administrator of his estate, originally brought this action against the nursing home and its corporate entities in Pennsylvania state court.  A complaint and then an amended complaint were filed against these parties in state court.  Defendants removed the case to this Court based on diversity of citizenship jurisdiction.  After removal, Plaintiffs filed a Second Amended Complaint (hereinafter "SAC") naming the administrator of the nursing home and two nurses who worked there as additional defendants.  Because they were residents of Pennsylvania, their presence in the case would defeat diversity jurisdiction and leave this Court without subject matter jurisdiction over this case.

1

Removal of this case to this Court and the filing of the SAC resulted in the parties filing several motions.  Defendants filed one motion seeking dismissal of parts of the SAC and another to strike it.  Plaintiffs, on the other hand, moved that the case be remanded to state court.

Argument was held on these Motions at which time Plaintiff noted that he planned to also add as a defendant the hospital where Ollie Taylor, Jr. had multiple admissions while he was a resident of the nursing home.  A week later, Plaintiff did so by filing a Motion for Leave to Amend the SAC, adding as defendants the hospital and its healthcare network where the decedent had the admissions.

Before the Court are Plaintiff's Motion for Leave to File an Amended Complaint to Join Additional Parties (Doc. No. 16) and an accompanying Motion to Remand (Doc. No. 17).  Defendants filed a Response in Opposition to both Motions.  (Doc. Nos. 18, 19.)  For reasons that follow, the Court will grant Plaintiff leave to file the Amended Complaint, allow Plaintiff to join the non-diverse Defendants, and remand this action to state court.[1]

II.     BACKGROUND

A.     Factual Background

Plaintiff Norman Taylor originally filed this negligence, wrongful death and survival action against the nursing home, GGNSC Philadelphia d/b/a Golden Living Center—Stenton (hereinafter "Golden Living Center"), and its corporate affiliates[2] following the death of his

---

[1]   In view of the Court's disposition of these Motions, there is no need for the Court to render a decision on Defendants' original Motions to Dismiss (Doc. No. 3).

[2]   The affiliates of Golden Living Center are corporate entities.  In the amended complaint filed in state court, Plaintiff lists the following related entities as defendants: GGNSC Philadelphia GP LLC; GGNSC Holdings, LLC; Golden Gate National Senior Care, LLC; GGNSC Equity Holdings, LLC; GGNSC Administrative Services, LLC; and GGNSC Clinical Services, LLC. (Doc. No. 1, Ex. B.)

father, Ollie Taylor, Jr., when he resided in the nursing home.[3]

Ollie Taylor, Jr. (hereinafter "Taylor") was admitted to Golden Living Center on June 10, 2010 and resided there until his death.  (Doc. No. 16, Ex. F. ¶¶ 95, 139.)[4]  From June 2010 to February 2013, there were no reported problems with Taylor's care. (Id. ¶¶ 96-97.)  On February 27, 2013, however, Taylor was admitted to Albert Einstein Medical Center (hereinafter "AEMC") for a swollen penis, urinary tract infection, and dehydration. (Id. ¶¶ 98-99.)  From this time until his death, Taylor was admitted to AEMC on two more occasions for pressure ulcers and dehydration, and received care from both Golden Living Center and AEMC for his ailments. (Id. at 28-37.)   Taylor experienced multiple pressure ulcers, wounds to the penis, multiple urinary tract infections, urosepsis, Methicillin-resistant Staphylococcus Aureus ("MRSA"), dehydration, malnutrition, sores inside of his mouth, wound infection, and severe pain.  (Id. ¶ 55.)  In the SAC, Plaintiff alleges Golden Living Center and AEMC failed to provide adequate care to Taylor and that this failure caused Taylor's death on April 6, 2014.  (Id. ¶¶ 143, 168.)

**B.   Procedural History**

On November 14, 2014, Plaintiff commenced this action against Defendants in the Court of Common Pleas of Philadelphia County. (Doc. No. 1, Ex. A.)   In his initial state court Complaint, Plaintiff listed the following entities as Defendants: (1) GGNSC Philadelphia d/b/a Golden Senior Living Center—Stenton; (2) GGNSC Lansdale GP LLC; (3) GGNSC Holdings

---

[3]   Norman Taylor was appointed the Administrator of the Estate of Ollie Taylor, Jr. on August 6, 2014.  (Doc. No. 1, Ex. B ¶ 3.)

[4]   The facts are taken from Plaintiff's proposed SAC which the Court is permitting him to file and amend.  Although Defendants contended that the original SAC adding the nursing home administrator and two nurses as defendants was improperly filed without leave of court in violation of Federal Rule of Civil Procedure 15(a)(1), the Court is now granting such leave and also allowing further amendment with the addition of Albert Einstein Medical Center and Albert Einstein Healthcare Network (the "Einstein Defendants").

LLC; (4) Golden Gate National Senior Care, LLC; (5) GGNSC Equity Holdings, LLC; (6) GGNSC Administrative Services, LLC; and (7) GGNSC Clinical Services LLC.  (Id.)

In Count I of the state court Complaint, Plaintiff alleged claims for "negligence, professional negligence, carelessness and recklessness."  (Id. ¶¶ 105-62.)  In Count II, Plaintiff brought a claim under Pennsylvania's Survival Statute, 42 Pa. Cons. Stat. § 8302, to recover damages on behalf of Taylor's living beneficiaries "for the pain, suffering and inconvenience" and "mental suffering" caused by "Defendants' breach of duties, negligence, carelessness and recklessness."  (Id. ¶¶ 163-68.)  Finally, in Count III, Plaintiff asserted a Wrongful Death claim under 42 Pa. Cons. Stat. § 8301 for "damages for the pecuniary loss suffered by the decedent's survivors" as a result of his death "as well as for the reimbursement of hospital, nursing, medical, and funeral expenses of administration" connected with decedent's death, and for damages for the deprivation of the "care, comfort, companionship, society, tutelage and assistance [the beneficiaries] would have received from Taylor, had he lived the remainder of his natural life." (Id. ¶¶ 169-77.)

Two days before filing the Complaint against Golden Living Center, Plaintiff filed a writ of summons on November 12, 2014, against AEMC in the Court of Common Pleas of Philadelphia County for negligence resulting in Taylor's death. (Doc. No. 16, Ex. D.)  At that time, Plaintiff did not attempt to consolidate the actions brought against AEMC and Golden Living Center.

On December 16, 2014, the original Defendants removed the state case to this Court based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.[5]  (Doc. No. 1.)  Defendants alleged that the value of the claims exceeded $75,000, Plaintiff was a citizen

---

[5] As noted previously, the initial complaint filed in state court had been amended one time.

of Pennsylvania, and Defendants, as corporate entities, were citizens of Delaware and California. (Id. ¶¶ 4, 6 citing 28 U.S.C. § 1332(a)).

On January 8, 2015, Plaintiff, without leave of Court, filed the SAC along with a Motion to Remand.   (Doc. Nos. 4, 8.)   In the SAC, Plaintiff named three additional individual Defendants[6] who provided care to Taylor, and another one of Golden Living Center's corporate affiliates, "Golden Gate Ancillary."   (Doc. No. 4.)   As Pennsylvania residents, the three individual caregivers were non-diverse Defendants.   Golden Gate Ancillary was a diverse defendant.   The Motion to Remand was based on the naming of the individual non-diverse Defendants whose presence would undermine diversity of citizenship jurisdiction.

In response, on January 22, 2015, Defendants filed a second Motion to Dismiss or Strike Plaintiff's SAC, claiming the SAC was improper under 28 U.S.C. § 1447(e)[7] and that joinder of the new Defendants was aimed at destroying subject matter jurisdiction.  (Doc. No. 9.)

On April 10, 2015, the Court heard oral argument on the motions.  During the hearing, counsel for parties addressed whether the Court should allow Plaintiff leave to join the non-diverse defendants, and thereafter grant the Motion to Remand.  (Hr'g Tr. 11, Apr. 10, 2015.)

During the hearing, counsel for Plaintiffs informed the Court that Plaintiff had initiated a separate state court suit against AEMC stemming from some of the same injuries that he is pursuing in the case against the Golden Living Center Defendants, namely, a sacral ulcer decedent suffered.  (Id. 20:10-18.)  Plaintiff's counsel also stated that he would seek leave to add

---

[6]   The three individual caregivers named as Defendants were: Karen Eileen Thomas, Nursing Home Administrator; Robyn Annette Marrell-Williams, Registered Nurse; and Patrice Michelle Glover, Registered Nurse.  (Doc. No. 4.)

[7]   28 U.S.C. § 1447(e) provides that, if after removal "the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

AEMC as a Defendant in this case.   When asked why Plaintiff failed to add AEMC as a Defendant originally, counsel for Plaintiff stated that he was waiting for a "certificate of merit" from a physician, a necessary document in order to proceed with his claims for medical negligence against AEMC.   (Id. 23:16-21.)   Counsel for Plaintiff further explained:

> The sacral ulcer, which is one of the main injuries in this case, opened up at [AEMC].   And so we instituted the action against [AEMC] for two parts: One because we didn't want an empty chair at the time of trial; and two, we needed to file a writ of summons because the statute was going to run in February, and we wanted to make sure we had everything stopped so we could get the medical records.
>
> Through our review, we have now obtained certificates of merit against [AEMC] and filed a complaint against them in state court on the basis that they're part of a continuing transaction of events; namely, that the—this pressure ulcer started at Golden Living Center, closed up.   He goes to [AEMC], it opens up again and persists and gets to a very large degree by the time of his death, a few short months later.   And so our intention is going to be that—Albert Einstein's counsel has already said they're going to blame Golden Living Center for this wound. And my understanding through discussions with counsel is that Golden Living Center believes it was [AEMC] that started this wound.
>
> So therefore, we're going to have a continuing course of events that we're going to feel obligated, regardless of what happens here today, to move for leave of court to bring [AEMC] into the federal action, or otherwise we're going to have two parallel court proceedings, where the defendants in each proceeding are pointing to the other person who's not present in that proceeding at that time as causing the injuries that eventually led to the death of our client.

(Id. 21-22.)

Based on the information adduced at the hearing regarding AEMC, Plaintiff's counsel was afforded the opportunity to expeditiously file the motion for leave to amend the proposed SAC to include AEMC as a Defendant.   Both parties were permitted to submit further memoranda on whether joinder of AEMC as a non-diverse defendant was proper under 28 U.S.C. § 1447(e), and whether remand was appropriate in this case.   (Id.)

In response, on April 17, 2015, Plaintiff filed a Motion for Leave to Amend the Complaint to add the Einstein Defendants and the individual caregivers as defendants under Federal Rule of Civil Procedure 20 (Doc. No. 16)[8] along with a renewed Motion to Remand. (Doc. No. 17.)  In Count IV of the proposed SAC, Plaintiff asserts a claim against the Einstein Defendants for "negligence, carelessness and recklessness."  (Doc. No. 16, Ex. F ¶ 291.)  In Count V, Plaintiff asserts a claim against the Einstein Defendants under Pennsylvania's Survival Statute, 42 Pa. Cons. Stat. Ann. § 8302. (Id. ¶¶ 299-300.)

Defendant Golden Living Center filed Responses in Opposition to Plaintiff's Motions. (Doc. Nos. 18, 19.)  For reasons that follow, the Court will allow Plaintiff to file and amend the proposed SAC adding as defendants AEMC, Albert Einstein Healthcare Network, and the three nursing home employees, and will remand the action to state court.

## III.    STANDARD OF REVIEW

In a removed case, 28 U.S.C. § 1447(e) governs joinder of parties.  Pursuant to this statute, when a plaintiff seeks to join a non-diverse defendant after the case has been removed, "the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).  District courts have substantial discretion in deciding whether or not to permit joinder of a non-diverse defendant.  Kahhan v. Massachusetts Cas. Ins. Co., No. CIV. A. 01-1128, 2001 WL 1454063, at *2 (E.D. Pa. Nov. 14, 2001).  The legislative history reflects a congressional intent to permit this latitude:

---

[8]  Rule 20 provides for the joinder of defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20.  Plaintiff does not specifically refer to the three non-diverse individual caregivers as defendants in his renewed Motion for Leave to File a SAC, but has included them in his proposed SAC.  (Doc. No. 16, Ex. F.)  The Court will treat the three individual caregivers as proposed defendants and consider them to be included in the Motion for Leave to Amend the SAC.

> [Section 1447(e)] takes advantage of the opportunity opened by removal from a state court to permit remand if a plaintiff seeks to join a diversity-destroying defendant after removal.  Joinder coupled with remand may be more attractive then dismissal under civil rule 19(b) or denial of joinder.

Carter v. Dover Corp., Rotary Lift Div., 753 F. Supp. 577, 579 (E.D Pa. 1991) (quoting H.R. Rep. No. 889, 100th Cong., 2d Sess. 72-73, reprinted in 1988 U.S. Code Cong. & Admin. News 5982, 6033).

The Third Circuit has not developed its own test for when joinder is appropriate under 28 U.S.C. § 1447(e), but has noted the propriety of relying on the Fifth Circuit's test set forth in Hengsens v. Deere Co., 833 F.2d 1179, 1182 (5th Cir. 1987).  Hayden v. Westfield Ins. Co., 586 Fed. Appx. 835 (3d Cir. 2014).  In Hayden, the Third Circuit stated as follows:

> [T]he Fifth Circuit has instructed that when a district court is "faced with an amended pleading naming a new nondiverse defendant in a removed case, [it] should scrutinize that amendment more closely than an ordinary amendment," and should consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether [the] plaintiff has been dilatory in asking for amendment, whether [the] plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities."

586 Fed. Appx. at 840-841 (quoting Hengsens, 833 F.2d at 1182); see also City of Perth Amboy v. Safeco Ins. Co. of Am., 539 F. Supp. 2d 742, 746 (D.N.J. 2008) (noting that district courts within the Third Circuit have adopted the Hengsens approach).

The Court will address each Hengsens factor seriatim.

## IV.    ANALYSIS

### A.    Plaintiff's Purpose in Seeking Joinder Is Not to Defeat Diversity

Under the first Hengsens factor, joinder under § 1447(e) is not proper if the plaintiff's sole purpose in seeking joinder is to destroy federal diversity jurisdiction.  833 F.2d at 1182. Determining the plaintiff's purpose depends mainly on what, if anything, a plaintiff knew about the defendant before and after filing the complaint.  Courts in this District have asked whether

the plaintiff knew of the additional defendant at the time of filing the original complaint, or if subsequent developments occurred after the filing of the complaint through which plaintiff gained additional information regarding the activities of a potential defendant.   City Line-Hamilton Builders, LLC v. Cincinnati Ins. Co., No. 12-03291, 2013 WL 1286187, at *5-6 (E.D. Pa. Mar. 29, 2013) (holding that the plaintiff "ha[d] proper reasons for joining the property owners because plaintiff became aware of information after filing its Complaint that gave rise to a scenario in which joinder of [the property owners] became increasingly necessary."); see also Montalvo v. John Doe I, Civ. A. No. 10-2617, 2010 WL 3928536, at *3 (E.D. Pa. Oct. 5, 2010) (holding that in applying Hensgens, "[s]ubsequent developments and the actions of the parties during the time between the filing of the complaint and the motion to amend can also be relevant considerations.").

An additional consideration under the first Hensgens factor is whether the claims against the non-diverse defendant arise out of the same set of operative facts. See Massaro v. Bard Access Sys. Inc., 209 F.R.D. 363, 369 (E.D. Pa. 2002) (permitting joinder because plaintiff's motivation was to avoid prosecuting two claims arising from the same set of facts in two separate fora, particularly to avoid each defendant pointing to the "proverbial empty chair of the other as the more culpable party.").   In order for claims to be considered as arising out of the same set of operative facts, the claims should be similar causes of action.   See Hayden, 586 F.App'x. at 840 (3d Cir. 2014) (finding joinder inappropriate where the breach of contract claim against the original defendant and the negligence claim against the original defendant did not arise under the same set of operative facts).

Here, Plaintiff's purpose in seeking to join the Einstein Defendants is not to defeat diversity.   Although Plaintiff was aware of potential claims against the Einstein Defendants

before filing the initial and amended complaints against the Golden Living Center Defendants in state court,[9] events that occurred after filing the complaints against Golden Living Center weigh in favor of permitting joinder.

Plaintiff has provided a reason to justify the need to add the Einstein Defendants that has no relation to an attempt to defeat diversity jurisdiction.  On November 12, 2014, in order to toll the statute of limitations, Plaintiff filed a Writ of Summons in the Court of Common Pleas of Philadelphia County against AEMC.  After obtaining the necessary Certificates of Merit,[10] Plaintiff filed a Complaint in the state court case against AEMC on February 12, 2015.  (Doc. No. 16-1 at 3.)  This Complaint was promptly filed after the COM was obtained.  Therefore,

_____

[9] Plaintiff was aware of potential claims against AEMC because Plaintiff filed a writ of summons against AEMC on November 12, 2014, two days before he filed the first state court complaint in this action.  (See Doc. No. 1, Ex. A; Doc. No. 16, Ex. D.)

[10] Under Pennsylvania Rule of Civil Procedure 1042.3, a "Certificate of Merit" (hereinafter "COM") is required before a plaintiff can commence an action for professional negligence. Pa.R.C.P. 1042.3 provides:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard . . . the plaintiff . . . shall file with the complaint . . . a certificate of merit signed by . . . (1) an appropriate licensed professional [who] has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

Pa.R.C.P. 1042.3(A)(1).  The purpose of this rule is to avoid lawsuits of questionable merit against medical providers. Womer v. Hilliker, 589 A.2d 269, 275-76 (Pa. 2006).

Golden Living Center contends Plaintiff could have included AEMC in the same writ of summons filed against it because Plaintiff initiated the lawsuit against Golden Living Center using a writ of summons.  (Doc. No. 18 at 7 citing Pa.R.C.P. 1042.3.)  During the April 10 hearing, Plaintiff's counsel noted that the reason why AEMC was not named originally was because "[W]e had not gotten support yet at that point.  We were afraid we could not get a physician and a nurse to sign off on the COM, which we had obtained with regards to Golden Living."  (Hr'g Tr. 11 at 23:16-19.)

Plaintiff's receipt of the COM after removal is a relevant subsequent event which negates an improper purpose to destroy diversity jurisdiction.[11]

Moreover, Plaintiff's claims against the Einstein Defendants and the individual caregiver defendants arise out of the same set of operative facts as the claims against Golden Living Center.  Plaintiff is suing the Einstein Defendants for negligent care given to Taylor that caused his pain and suffering, and ultimately led to his death on April 6, 2014.  The claims made against the Einstein Defendants overlap with the claims made against the nursing home Defendants and cover the same period of time.  Specifically, Plaintiff is asserting in the SAC claims for negligence and corporate negligence against both the Golden Living Center Defendants and the Einstein Defendants for the development, exacerbation, and deterioration of decedent's sacral, buttocks and bilateral heel pressure ulcers.  (See Doc. No. 16, Ex. B ¶ 82, 86-88.)  Denial of joinder of the Einstein Defendants here would require Plaintiff to litigate claims based on the same set of facts against the Golden Living Center Defendants and the Einstein Defendants in different fora.  If the Einstein Defendants are not joined, each Defendant could point to the absent Defendant as the source of Taylor's damages.[12]  Therefore, Plaintiff's motivation in

---

[11] Plaintiff's counsel admitted that he had knowledge of the three individual caregivers before filing the complaint in state court against Golden Living Center and candidly admitted there is no real explanation as to why he did not include them in the original complaint.  (Doc. No. 20 at 32.)  However, Plaintiff's strong reason for failure to include AEMC in the original complaint minimizes the impact of his omission, whether inadvertent or otherwise, of the individual caregiver defendants.

[12] Counsel for Plaintiff expressed concern that such finger-pointing may occur at the April 10, 2015 hearing on the motions:

> So therefore, we're going to have a continuing course of events that we're going to feel obligated, regardless of what happens here today, to move for leave of court to bring [AEMC] into the federal action, or otherwise we're going to have two parallel court proceedings, where the defendants in each proceeding are

seeking joinder was not to defeat diversity, but to promote fairness and economy by avoiding the necessity of prosecuting two claims in different fora.

### B. Plaintiff Was Not Dilatory in Seeking Joinder Because Plaintiff's Purpose Was Not to Delay Litigation

The second <u>Hensgens</u> factor is whether the plaintiff was dilatory in seeking joinder.  833 F.2d at 1182.  An action is dilatory when "the purpose of plaintiff's delay in seeking an amendment was to prolong the litigation."  <u>Kahhan</u>, 2001 WL 1454063, at *2.  Both the length and nature of the delay are relevant factors; however, the passage of time is not by itself indicative of dilatory conduct.  <u>Montalvo</u>, 2010 WL 3928536, at *4.

Whether an amendment is dilatory is a fact intensive inquiry that depends on the circumstances of the case.  <u>See, e.g.</u>, <u>City Line-Hamilton</u>, 2013 WL 1286187, at *7 (finding no dilatory behavior where plaintiff filed a motion to amend forty-seven days after defendants filed their answers); <u>Estate of Horvath v. Ciocca,</u> No. 07-2686, 2008 WL 938927, at *5 (E.D. Pa. Apr. 4, 2008) (holding plaintiff was not dilatory where he became aware of the non-diverse defendant six months before filing the motion to amend and was waiting for a ruling on a prior motion to amend for the same case).

In this case, Plaintiff's purpose was neither to prolong litigation nor to cause unnecessary delay.  Plaintiff was waiting for the COM before proceeding with the case against AEMC.  Upon receipt of the COM, two months after Golden Living Center removed the case to federal court, Plaintiff filed the complaint against AEMC in state court on February 12, 2015.  The April 10, 2015 hearing on the Motions filed in this case by both parties was scheduled on March 3, 2015

---

pointing to the other person who's not present in that proceeding at that time as causing the injuries that eventually led to the death of our client.

(Hr'g Tr. 11, 21-22.)

(Doc. No. 14)—two weeks after Plaintiff obtained the COM for AEMC. The next logical opportunity for Plaintiff to indicate his intent to join AEMC as a defendant was at the April 10 hearing, and Plaintiff did so. Given the time necessary to obtain a COM and the fact that a hearing in this Court on motions was scheduled shortly thereafter, there is no indication of purposeful delay. Therefore, the second <u>Hensgens</u> factor weighs in favor of remand.

### C.  Plaintiff May Be Injured by Denial of Joinder Because Denial Would Force Plaintiff to Litigate in Two Separate Fora

The third <u>Hensgens</u> factor is whether the plaintiff may be injured by denial of joinder. Courts in this District have noted that requiring a plaintiff to litigate two lawsuits at the same time may cause the plaintiff injury. <u>See, e.g.</u>, <u>Kahhan</u>, 2001 WL 1454063, at *2 (holding that if joinder is not permitted, "plaintiff will be forced to litigate two lawsuits at the same time, increasing her litigation costs tremendously"); <u>Lehigh Mech., Inc. v. Bell Atl. Tricon Leasing Corp.</u>, No. CIV.A. 93-673, 1993 WL 298439, at *4 (E.D. Pa. Aug. 2, 1993) (stating that an increase in litigation costs is evidence of injury to a plaintiff); <u>see also</u> <u>City Line-Hamilton</u>, 2013 WL 1286187, at *8 ("Litigating this matter twice may injure plaintiffs to some degree by expending resources to fight the same fight in two fora and the possible risk of conflicting decisions.").

Here, if joinder is denied, Plaintiff would have to simultaneously litigate claims against Golden Living Center in federal court and against the Einstein Defendants in state court. Plaintiff would suffer financial harm due to the cost of litigating similar lawsuits in separate fora. This risk of injury to Plaintiff supports allowing joinder of the Einstein Defendants.

### D.  Other Equitable Factors Favor Joinder

The fourth <u>Hensgens</u> factor is described as all other factors that bear on the equities. Equitable factors considered by courts in this District include the efficient use of judicial

resources, the effect remand will have on the defendant, and the expertise of the court relative to the applicable law.

First, courts have found that where two lawsuits arise from a common nucleus of fact, judicial economy will be negatively affected by allowing concurrent federal and state proceedings.  See Kahhan, 2001 WL 1454063, at *3 ("It would be a great waste of judicial resources to explore these issues in two separate proceedings."); Lehigh Mech., Inc., 1993 WL 298439, at *4 (recognizing that litigating two suits arising out of the same transactions would be an insufficient use of judicial resources).

Here, the claims against Golden Living Center and the Einstein Defendants arise out of the injuries and subsequent death of Taylor.  The respective rights and liabilities of all the parties should be decided in one proceeding, and requiring Plaintiff to pursue his claims in separate fora would be a waste of judicial resources.

Second, equitable factors favor joinder where a defendant will not be prejudiced by remand.  See City Line-Hamilton, 2013 WL 1286187, at *8 (observing that remand will not prejudice defendants because defendants face the application of Pennsylvania state law in either forum).  The state case will be litigated in the same city where the federal court is located. Moreover, Pennsylvania law would apply in either court.  Defendants could even benefit from joinder if the non-diverse defendants share responsibility.  See id. (stating that a defendant's interests may be served by the joinder of non-diverse defendants if the non-diverse defendants are liable).

Finally, "when there is a lack of a significant federal interest in deciding the state law issues, federal courts prefer to have state courts interpret their own laws."  Kahhan, 2001 WL 1454063, at *3; see also Stipa v. Rodenhicer, No. CIV. A. 95-1967, 1995 WL 384616, at *2

(E.D. Pa. June 23, 1995) (noting that "federal courts prefer to leave the interpretation of state law to the state courts in cases where, as here, such state law predominates."); Carter v. Dover Corp., Rotary Lift Div., 753 F. Supp. 577, 580 (E.D. Pa. 1991) (allowing remand where the case involved exclusively state law issues).

Like Stipa and Carter, this case involves exclusively state law claims.  For this reason, the state court should be the one to interpret state law and preside over Plaintiff's claims.  In sum, considering the Hensgens factors, Plaintiff will be permitted to file the Amended SAC and remand of this case to state court is appropriate.

**V.     CONCLUSION**

As noted, the application of the Hensgens factors, coupled with the court's wide latitude in allowing remand, favor remand in this case.  The Court will therefore permit Plaintiff to file its Second Amended Complaint (Doc. No. 17) and will grant the Motion for Remand (Doc. No. 18). An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NORMAN TAYLOR,

                Plaintiff,

    v.

GGNSC PHILADELPHIA LP, et al.,

                Defendants.

CIVIL ACTION
NO. 14-7100

## ORDER

**AND NOW**, this 22nd day of September 2015, upon consideration of Plaintiff Norman Taylor's Motion for Leave to Amend the Complaint to Join Additional Parties (Doc. No. 16), Plaintiff's Motion to Remand (Doc. No. 17), Defendants' Response in Opposition to Plaintiff's Motion for Leave to Amend (Doc. No. 18), and Defendants' Response in Opposition to Plaintiff's Motion to Remand (Doc. No. 19), and in accordance with the Opinion of the Court issued this day, it is **ORDERED** as follows:

1. Plaintiff is granted leave to file the Second Amended Complaint (Doc. No. 4), which was filed on January 8, 2015 and is therefore the operative Complaint in this case.

2. Plaintiff's Motion for Leave to Amend the Second Amended Complaint to Join Additional Parties (Doc. No. 16) is **GRANTED**.

3. Plaintiff's Motion to Remand (Doc. No. 17) is **GRANTED**.

4. The Clerk of Court shall remand this case back to the Philadelphia Court of Common Pleas.

5.      The Clerk of Court shall close this case for statistical purposes.


/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.